Whitman, J.
This is a petition in error to the District • Court of "Vinton county, to reverse the judgment of that court, for alleged error in reversing the judgment of the Court of Common Pleas of that county.
The action below was replevin, brought by Miles Ratcliff, plaintiff in error, against Henry Teters, defendant in error, to recover possession of certain hogs, and damages for their detention.
The pleadings are in the usual form. The case came by appeal to the Court of Common Pleas.
The ownership of the hogs was admitted to be in Rat-cliff ; but his right to the immediate possession was denied by Teters, upon the ground that he had impounded them lawfully, under the provisions of “ an act to restrain from running at large certain animals therein named,” passed April 13, 1865 (S. & S. 7). And the case involved, in some respects, the construction of that act.
In the trial in the Common Pleas, various errors are alleged by the defendant in error, Teters, in the admission of evidence, and in the charges given and refused by the court.
We shall only notice such of the errors assigned as seem material.
The facts are sufficiently shown in the following bill of exceptions:
■ “ Be it remembered, that on the trial of this cause at the Court of Common Pleas within and for the county of Vin *69 ton, at the October term, a. d. 1867, the said plaintiff’, to maintain the issue on his part, offered the evidence of the said Miles Ratcliff, plaintiff, showing that he was the owner of the hogs replevied in this cause, and he, on the 4th day of March, a. d. 1867, attended the meeting of the trustees of Eagle township, Vinton county, Ohio, in which township plaintiff' and defendant resided, and asked for a special permit for his cattle and hogs to run at large, there being no general permit granted by the commissioners of said county. The plaintiff offered to prove by said witness the granting of said permit, which being objected to, and said objection being sustained by the court, the plaintiff produced the record of the proceedings of said trustees, proved by township clerk that said book (record) was one in which he entered their proceedings, and thereupon proved by said record that said trustees held their regular meetings on the 4th day of March, a. d. 1867, at the usual place of holding elections in said township.
“ Plaintiff offered in evidence an entry of an order that Miles Ratcliff, Benj. S. Rains, and O. D. Swinehart be granted permits for their stock to run at large until the first Monday in March, a. d. 1868, and marked, ‘ Received, April 10, 1867.’ Whereupon, the defendant objected to the same being permitted to go in evidence to the jury, which objection was overruled by the court, and said evidence admitted; to which opinion of the court the defendant excepted.
“And thereupon, the plaintiff, further to maintain the issue upon his part, offered in evidence a certain paper writing purporting to be a special permit, which is in the words and figures following, to wit:
“ ‘ Know all men by these presents, that we, the undersigned trustees of Eagle township, of Vinton county, Ohio, by virtue of the' power and authority vested in us by the second section of an act of the general assembly of the State of Ohio, passed April 18, 1865, entitled “ an act to restrain from running at large certain animals therein named,” do hereby grant and permit Miles Ratcliff, of said township, *70 to suffer his stock, consisting of cattle and hogs, to run at large till the first Monday in March next ensuing, 1868.
‘“Given under our hands, this 4th day of March, 1867.
“ ‘ Owens P. Clark,
“ ‘ Thomas Slagle,
“ ‘ William Francis,
“ ‘ Trustees.’
“ There being no dispute as to the signatures of said trustees.
“ Thereupon, the defendant objected to the admission of said paper writing in evidence, which objection was overruled by the court, and said evidence admitted; to which opinion of the court the defendant excepted.
“ Thereupon, plaintiff offered further parol testimony, to show that said permit was granted on said 4th day of March, a. d. 1867; to which defendant objected, and said objection was overruled by the court, and said evidence admitted; to which opinion said defendant excepted.
“ Whereupon, evidence was given to show that plaintiff attended the regular meeting of said trustees, held on said 4th day of March, 1867, and stating that his present permit had expired, said that he wished said trustees to give him another, and also one for Mr. Rains and Mr. Swinehart; and also that Owens P. Clark, one of the trustees, informed him, in the presence of the others, that they would grant said permits, and that he would write them out that day, and send them by Mr. Slagle, one of the trustees, as Mr. Slagle,'who passed his house, went home; that Ratcliff, so understanding that said permits would be granted, and being in haste, immediately left; that the same day Owens P. Clark asked the township clerk if he had the volume of laws containing the act restraining stock from running at large, and was told that he had not; that, preferring to have said laws, so that he could make out said permits correctly, he did not make them out as he had promised, and also because they had but little time; and informing Mr. Slagle of the reason, he (the said Mr. Slagle) so informed Mr. Ratcliff as he went home, stating to him *71 that Mr. Clark said he would make out said permits in a few days. That no vote was taken on said applications for permits, it being proven in evidence that it was not customary so to do. It was further proved that said Slagle was in favor of granting said permits, and considered them granted on said 4th day of March. That William Erancis, another of said trustees, was sick on that day, lying on the counter, paying but little attention to business; that he heard the application of plaintiff, for permits, and what Mr. Clark said to him, and expressed, no objection; but that he was, at that time, not in favor of granting any permits, and that he did not consider any official action taken. Plaintiff proved, by Benj. S. Rains, that said Erancis, on the day he signed the written papers hereinbefore recited, purporting to be a permit, to wit, on the 18th day of March, a. d. 1867, said that he had not intended to sign the same, but had concluded to do so — that they were of no account; that if they were it was not his fault; that he did not think the law of any account.
“ The said plaintiff further testified that on Eriday before the hogs were taken up by the defendant and impounded, he, told said defendant that he had permission to let his stock run at large. (The defendant testified that plaintiff did not tell .him so.) That on Sunday, the 10th day of March, a. d. 1867, plaintiff learned that defendant had taken up his hogs and those of his son-in-law, Benj. S. Rains. That on Monday, the 11th day of March, the said Miles Ratcliff and Benj. S. Rains went to demand said hogs. That they met the defendant coming to notify them that ho had taken them up. That said plaintiff demanded the same. That he produced no permit; that he did not say that he had one; that he tendered defendant no payment, and that defendant said he had taken them up under the aforesaid stock law.
“Evidence was given to prove that when Ratcliff demanded said hogs, defendant demanded one dollar per head, and pay for one month’s keeping, and on part of defendant that he only demanded one dollar per head, saying that *72 that would not pay him for all that they had eaten off him during the last month.
“ It was further in evidence that said Ratcliff obtained said written permit, signed by Owens P. Clark, on Monday, March 11, 1867, before demanding said hogs; that he obtained Slagle’s signature on the same day, after demanding the hogs, and that it was signed by the said William Eranon the 13th day of March, 1867, after writ of replevin issued in this cause.
“ It was further proved that no entry was made granting said permit until the 10th day of April, A. d. 1867; that then it was copied by the township clerk from minutes made up by Owens P. Clark, about the 1st day of April, and handed to said clerk on the 10th day of April, and that said township clerk, although present at said meeting on said 4th day of March, did not know that any application had been made, or any proceedings had in the premises, until and save as he received the minutes so handed to him.”
The provisions of said act, so far as it is necessary to notice them in this case, are :
“ Sec. 1. That it shall be unlawful for any person or persons, being the owner, or having the charge, of any horses, mules, cattle, sheep, goats, swine, or geese, to suffer the same to run at large in any public road or highway, or in any street, lane, or alley, or upon any uninclosed land in the State of Ohio, etc., except as hereinafter provided.
“ Sec. 2. That general permission may be granted by the commissioners of any county, for any animal named in the first section of this act to run at large in their respective counties, and in counties where there is no general permission, township trustees may grant special permits, and such permission, whether general or special, shall terminate on the first Monday of March in each and every year; and such special permits shall be. revocable at the discretion of the township trustees, upon three days’ notice in writing to the owner of such animal, and such special permits shall *73 be directed to individuals, and for particular animals described therein.”
Section 6 authorizes “ any person finding any animals mentioned in this act at large contrary to its provisions,” to take up and confine, etc.
“ Sec. 7. That the person or officer taking up such animals, shall be entitled to charge and receive from the owner of such animals certain fees named.
“ Sec. 8. That the plural number used in this act, naming the animals to be prohibited from running at large, and the word ‘ animals ’ wherever used herein, shall be understood and held to apply as well in the singular as plural number,” etc.
It was insisted below that section 2 of this act allowing permits was unconstitutional, and error is assigned for the refusal of the court so to charge.
Since the trial below, the Supreme Court has decided this question in favor of the constitutionality. Fox v. Fox, 24 Ohio St. 335.
The errors specially insisted on are, in substance:
1. That, admitting the trustees of the township had legal authority to grant a special permit to the plaintiff in error, they did not do so. That no permit was officially granted.
2. That if one was in fact granted, it was not such a permit as would protect the plaintiff in error, because it was deficient in the description of the stock.
3. That even if a legal permit with correct description was granted, yet that it only became such from the time of its actual signature by the trustees, or a majority of them, and from the recording by the township clerk of its allowance, and could not relate back to the time when granted.
As to the first error: The statute (S. & C. 1568, sec. 14), provides as to “ township trustees,” that “ a majority shall be a quorum to do business at all meetings of the trustees.”
At the regular meeting of the trustees, held March 4, 1867, at the proper place, the plaintiff in error applied to *74 them for a special permit for his stock to run at large, his former one having expired.
And the trustees then acted on it, and the plaintiff' in error was advised by Clark, speaking for the board, that his application was granted. No vote was formally taken, and the proof is that it was not customary to take one. The law did not require a formal vote. Ratcliff was also advised by Clark, that Slagle, one of the trustees, would bring him the permit that evening. To this Slagle agreed. The reasons why the permit was not made out that day, were that the statute was not present, and Clark preferred to have it, so he could make out the permit correctly, and because the trustees had but little time that day. Slagle stopped on his way home, saw Ratcliff, and so informed him, and further stated to him that Clark said he would make out the permit in a few days.
William Francis, the third trustee, though present, was sick and expressed no objection to what was said or done, but states that he did not consider that any official action was taken, and that at that time he was not in favor of granting any permits. He, however, afterward, on March 13,1867, signed the permit.
It clearly appears by these facts, that a majority of the trustees, acting officially, at a regular meeting, upon a formal application by him for that purpose, made an order granting such .permit to the plaintiff in error. The granting of special permits by the trustees is; in law, an official act. The law does not require such official act to be by ballot, or then put in writing, or then at once recorded. So that the trustees act officially, at a regular meeting, on the matter, and decide upon, and announce then, their decision upon the application, is all that is required by the law to establish the fact that the permit was granted.
Next, was the permit erroneous in its description of stock? Its language on this point is: “Do hereby grant and permit Miles Ratcliff, of said township, to suffer his stock, consisting of cattle and hogs, to run at large till the first Monday in March next ensuing, 1868.”
*75 The court was asked to charge that the language “ cattle and hogs ” is not such a particular description as is contemplated by the act. And the refusal to do so is claimed to be error. It is also claimed that a special permit must particularly describe each animal in the permit, and that construction is asserted to he the only correct one of this provision in the 2d section: “ And such special permits shall be directed to individuals, and for particular animals described therein.”
The act in question is loosely drawn, and by the use of the words animals and animal, some apparent confusion appears in its language.
But we think a careful examination of the whole law, considering its object, the mischief to be remedied, and the exceptions allowed in its operation, will harmonize all apparent contradictions, and make its meaning plain.
1. The object of the law was to prevent certain classes of animals, naming them, from running at large within counties and townships.
2. The mischief to be remedied was the danger to crops from such classes of animals so running at large.
3. But as in some counties and in some townships, owing to the character of the territory and other reasons, no such mischief was likely to arise if the classes of animals named were permitted to run at large, the second section authorized the commissioners of any eoiinty to grant general permission for “ any animal named ” in the first section, and which embraces all the classes of animals affected by the law, to run at large in their respective counties. The permission here allowed is a general one, necessarily negativing the idea of any special permit of special description. All the commissioners have to do to give such permission, is to make an order at any regular meeting that all the animals of the several classes named may run at large, or that the animals of any one of the classes, as swine, or cattle, or horses, may so run. Now it will be seen if the word “ animal ” so used in this first section is to be limited to any particular *76 animal, such limitation at once renders impossible this general permission by the commissioners.
In counties where no such general permission is given, township trustees may grant special permits, “ directed to individuals, and for particular animals described therein.” And such special permits are made revocable at the discretion of the trustees, upon three days’ notice in writing “ to the owner of such animal.” The object of this special permission, so far as the character of the animals is concerned, is manifestly the same as is that of the general permission. It is to allow to individuals that all the animals of all the classes named, or only those of any one or more of the classes, or a limited number of either, which are owned by or under the charge of such individuals, may run at large. But the law does not authorize the township trustees to give a general permission to all people in their township for the animals named to run at large. This power is only given to the commissioner's. But the township trustees, in exercising their power to grant permits, must do so specially by naming the individuals to whom they are granted, and such permits must only be for particular animals described therein — that is, animals of a particular class or classes. The object, and the mischief to be remedied, it is evident, are the same under either a general or special permission. No animals of the classes named must run at large either generally over a whole county or township, or over a more limited area, such as animal a of one or more individual owners might naturally seek for a range, without permission given either generally or specially.
And while by the general permission of the county commissioners, all the people of the county through all the townships may let the animals named run at large, all the people of a township where no such general permission has been given, can not allow such animals to run by any general township trustee permission. But whoever desires the permission, (be they many or be they few in such township,) must get an individual permit, and it must be for “ particular animals.”
*77 The object and mischief to be remedied, then, being the same under both kinds of permission, what more is needed by way of description than to have the permit state the particular animals so permitted to run ; that is, the particular class or classes of animals, whether cattle, or horses, or mules, or swine, or goats, or sheep, or geese, coupled with the further description that such animals are his or hers, or under their charge, referring to the person getting the permit.
To go beyond this, and demand a particular and special description of each single animal, so that such animal could at once be identified as being the animal licensed to run, in our opinion is not demanded by a fair and reasonable view of this statute; and as to some of the classes named such description would be impossible, unless, indeed, the owners of a flock of geese should be held bound under the law to so mark each one of the flock as to afford visual proof of the special identity of each goose, gander, and gosling. The law contemplates no such necessity lb is a full compliance with the object of the law and its provisions if these special permits contain a description of the particular class or classes of animals, and state that they are the property of, or under the custody and control of the person to whom the permit is granted.
It is clear that in this law the words * animal ” and “ animals” are used indiscriminately and synonymously. Nor do we see any force in the argument of counsel, that if so general a description as the one used in the permit given to Ratcliff — “his stock, consisting of cattle and hogs” — be held good, a person might, after getting such a permit, fraudulently purchase other cattle and hogs, and add them to his licensed stock.
It is not to be forgotten that the question of granting these permits is wholly within the discretion of the township trustees; and it is not likely that, in the township, frauds of the kind suggested, or any other fraud in the matter of permits, could be practiced without its coming to the knowledge of the trustees; and, in such case, the board *78 would undoubtedly revoke its permit. Besides, no possible evils of fraud in tbe description, or in its generality, and consequent difficulty of identification of tbe animals licensed, could compensate for tbe labor and difficulty and expense which the enforced special description by individuals of the animals in permits, contended for by counsel, would entail upon owners, on trustees and clerks of townships.
Then, certainly, no limit, by the statute, is imposed upon the trustees as to the number of “ particular animals ” they may give a special permit for; they may, in their discretion, limit the permit to any one class of animals, or to a limited number of that class. It may be for one cow, one hog, one horse, or one hundred or one thousand of each. The only limitation is that such permit can only be given to the owner, or one having such animals in charge. Now, it is obvious that when a large number of animals are so licensed, no description beyond a general one is reasonably possible.
The legislature must be presumed to have passed this act with a knowledge of the subject-matter; and, with such knowledge, they could not have intended to virtually render the law nugatory as to the special permits, as it would be on the construction demanded by defendant in error.
But if resort be - bad to the words of the act, we reach the same result on construction as upon the general view we have taken of the object and mischief to be remedied. Upon no other construction than the one we have stated, is it at all possible to give force and effect to the different sections.
Thus, the first section uses the words “ such animals,” applied to all the various classes; while the second section, referring to the animals of the first section, as synonymous with “ any animal,” uses the words “ such animal.” So the fourth section twice repeats the words “ such animal,” while distinctly the word “ animal ” applies, and was intended to apply, to any or all of the animals mentioned in the first section, which might be found at large. The construction *79 claimed by defendant in error would, under this fourth section, limit the prosecution to a single animal, if even one hundred were at large in violation of the law. In the fifth section, we find both the singular and plural number signifying the same thing. Then, in the sixth and seventh sections, the plural (animals) is used altogether ; while, in the eighth section, as we have said, it is provided that whenever the plural number is used, it shall apply as well in the singular as plural number.
As to the third error: "When did the permit take effect— from the date of its actual signature by a majority of the trustees, or from the time of its allowance being .recorded by the township clerk, or from the date of its actual allowance ?
It is shown in the evidence that the official act of granting the permit was on the 4th of March, 1867, but no entry of the order was made until the 10th day of April, 1867; that then it was copied by the township clerk from minutes made up by Owens P. Clark, one of the trustees, about the 1st day of April, and handed to said clerk on the 10th day of April; and that said township clerk, although present at the meeting on the 4th day of March, did not know that any application had been made, or any proceedings had in the premises, until and save as he received the minutes so handed to him.
The permit was signed by two of the trustees, Clark and Slagle, on the 11th of March, before the suit was brought, and by Erancis, the third trustee, on the 13th of March, 1867, after the writ of replevin had issued.
The permit is dated 4th of March, 1867. Teters impounded the hogs on Sunday, the 10th of March. In the view we take of the case, we deem it immaterial to notice the questions made as to the effect of the hogs .being impounded on Sunday, or of the time when either or all of the trustees actually signed the permit, or whether the plaintiff in error notified Teters on the 8th of March that he had a permit, or whether Teters, by demanding illegal fees for impounding and feeding the hogs, from Ratcliff, on *80 Ms demand made for the hogs, and refusing to give them up until such fees were paid, was or was not a trespasser ah initio.
The controlling question is, did the permit, when signed, relate back to the day, the 4th of March, 1867, when the trustees made the order granting it ? If it did, then the plaintiff in error is protected in his right to have had his stock running at large on the 10th of March, when they were seized and impounded by the defendant in error, and he was a trespasser and had no right of possession in the hogs.
"We apprehend that the law on this point is well settled both in reason and by authority. As we have said, the act of the trustees, or a majority of them, in granting a permit on the 4th of March, 1867, was an official act — as much so as any other act could have been. Ratcliff had made the proper legal application for one. That was all he could do in the premises. He could not control the clerk or the trustees as to the recording the grant, or in making it out. His duty had been done — his power over the matter was ended; but he was, by the order of the board, granted his permit. He thus became entitled to all its benefits. It was his legal right to have the permit made out as from that time, for the order granted it from that date for one year. He can not be prejudiced by the omission of the clerk. He did all that the law required him to do in order to procure the permit, and it was the duty thereupon of the township clerk to make an accurate record of the official proceedings of the trustees in granting said permit. Had the clerk and trustees done their duty, this litigation would never have ensued; and this plaintiff in error has been put to all the cost and vexation of a lawsuit simply from. the neglect of official duty of the clerk and trustees.
This question has long since been settled in Ohio. In the case of King v. Kenny, 4 Ohio, 79, a very important litigation depended on the fact whether a certain public highway had been legally established. The statute provided *81 that the line of the proposed road shall be viewed and surveyed, “ and that the survey and report of the viewers ” be recorded, and from thenceforth such road should be a public highway.
The clerk of the commissioners made no such record. But the court properly said, on pages 82, 88: “ The omission was in the clerk of the commissioners. It would seem unreasonable that such ministerial nonfeasance should render the whole proceedings nugatory. To authorize this construction, for such omission, would require precedent and authority; but, in fact, they are the other way. "When all the requisites have been performed, which authorize a recording officer to record any instrument whatever, it is in law considered as recorded, although the manual labor of writing it in a book kept for that purpose has not been performed.” Citing also Marbury v. Madison, 1 Cranch, 161; 10 East, 350. "We might cite numerous authorities, were it needed to sustain this doctrine so well stated by our own court. But this rule of law is now as well settled as any other. The only question to be made in applying the rule is, was the act of recording, which was omitted, a mere ministerial act ? If so, then whenever done, it is only the recorded evidence of the official act, and relates back to the time when it should have been done.
Such was the case here. The recording to be done by the township clerk was a ministerial act, and though not performed till the 10th day of April, 1867, it related back, as did the permit, to the 4th day of March, 1867, the day when the order granting the permit was made, and when that should have been recorded, and the permit filled out.
But it is further claimed by the defendant in error, that the Court of Common Pleas erred in the admission in evidence of “ an entry of an order that Miles Ratcliff, Benj. S. Rains, and O. D. Swinehart be granted permits for their stock to run at large until the first Monday in March, a. d. 1868, and marked, “ Received April 10, 1867.”
The bill of exceptions shows that before this evidence *82 was offered, the plaintiff in error offered to prove, by bis own testimony, that, among other thiDgs, the said permit had been granted him on the 4th of March, 1867. This evidence was, at that stage of the case, properly excluded, for the record of the official act was, of course, the best evidence, if there was such record. Then, as stated in the bill of exceptions, upon this rejection, the plaintiff in error “ produced the record of the proceedings of said trustees, and proved by the township clerk that said book (record) was one in which he entered their proceedings, and thereupon proved by said record that said trustees held their regular meeting on the 4th day of March, A. d. 1867, at the usual place of holding elections in said township.”
This evidence was not objected to by the defendant in error. And then the entry of the order objected to was offered. It was clearly competent to admit this entry as a part of the recorded proceedings of the trustees, concerning the very matter in dispute, viz., whether a permit had or had not been granted to Ratcliff. Its effect was one thing, its competency another. The next evidence admitted, and which is excepted to, was the permit itself, there being no dispute as to the signatures of all the three trustees to it.
No reason is assigned why this paper was not competent, and we can only suppose that it was objected to as not being a legal permit for want of a special description of the stock. We have said the description was sufficient. Then, following the introduction of this paper, the plaintiff in error was permitted to give “ further parol testimony to show, as the bill states, that said permit was granted on the 4th day of March, a. d. 1867,” and the admission of which is also claimed as erroneous by the defendant in error. We are at a loss to understand the ground of this exception — none is stated. If it was objected to as not being the best evidence of the fact, and that the record of the proceedings is, we find that that record is silent as to the date. All that the record shows on this point is that the entry of the order granting the permit was marked, *83 “ Received April 10, 1867.” But this does not show or pretend to show at what date the permit was in fact granted. Now the plaintiff in error had the right in some way, if he could, to prove this vital fact. Surely if the clerk or the trustees had failed to cause a record of it to be made, he could not thereby be deprived of its benefits, as he would have been unless permitted in some way to show the fact. Of course the record could not be 'contradicted by parol. But no contradictory proof was offered; proof by parol was admitted because the record was thus silent, and because such proof was the next best evidence, and the only proof that could be made. Accordingly the court permitted this omission of what should have been recorded to be supplied by parol testimony of just what was said and done by the trustees in this matter on that day; in other words, their official action was testified to by a witness who knew what it was. There was no error in the admission of this testimony.
Errors are also assigned in the charges to the jury given and refused by the court. The rulings of the court were in conformity to the opinion we have expressed, and upon the whole case we are of opinion that the Court of Common Pleas was correct in its rulings and judgment, and that there was error in the judgment of reversal rendered by the District Court.
The judgment of the District Court is reversed, and the judgment of the Court of Common Pleas is affirmed with costs.
Scott, C. J., Wright and Johnson, JJ., concurred. Day, J., dissented.